**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1178-17T1

HUGO SANTOS,

    Plaintiff-Appellant,

v.

PAULA LINHARES,

    Defendant-Respondent.

_____

Argued October 30, 2018 – Decided November 19, 2018

Before Judges Gilson and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-1700-16.

Mario Apuzzo argued the cause for appellant.

Charles F. Vuotto, Jr. argued the cause for respondent (Starr, Gern, Davison & Rubin, PC, attorneys; Charles F. Vuotto, Jr., of counsel and on the brief).

PER CURIAM

After three days of trial in this contentious matrimonial litigation, the parties entered into a consent final Judgment of Divorce (JOD), which incorporated a Marital Settlement Agreement (MSA). The JOD resolved all issues between the parties except the amount of counsel fees, if any, that plaintiff Hugo Santos was obligated to pay defendant Paula Linhares, and the allocation of costs for the parties' joint accounting experts and mediator.

Pursuant to the JOD, the parties agreed that the court would resolve the outstanding disputes by considering the certifications of counsel and the parties' briefs. After evaluating those submissions, Judge Lisa F. Chrystal issued a September 28, 2017 order and comprehensive written opinion granting defendant's fee application in the amount of $72,514.09 and directing plaintiff to pay 60% of the experts' and mediator's fees with defendant bearing responsibility for the remaining 40%. Plaintiff appeals the September 28, 2017 order. We affirm.

In her written opinion, Judge Chrystal considered the factors under Rule 5:3-5(c).[1] In considering the financial circumstances of the parties, the court

---

[1] The Rule 5:3-5(c) factors are: "(1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred

noted that plaintiff's trial testimony regarding his salary "was not always credible" and his business "always had significantly more value than [he] admitted." The court also considered the parties' disparate income and assets and concluded that plaintiff had the greater ability to pay a fee award.

The court determined that plaintiff's litigation conduct was unreasonable, at times not advanced in good faith, and caused defendant to incur fees unnecessarily. Specifically, the court noted that during the litigation, plaintiff misrepresented his income and the value of his company. In addition, the court considered the amount of fees incurred by the parties for their present and former counsel and acknowledged it had previously denied defendant's request for attorney's fees.

As to the "degree to which fees were incurred to enforce existing orders or to compel discovery," the court explained that defendant was forced to file a motion to enforce plaintiff's court-ordered pendente lite support obligations. Finally, the court stated that plaintiff failed to comply with at least one other court order and submit required documents to facilitate settlement.

---

by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award."

On appeal, plaintiff argues that the court abused its discretion because the award of counsel fees and allocation of expert costs were manifestly unreasonable, and the court's factual findings were contrary to the evidence. We disagree and affirm the September 28, 2017 order for the reasons stated in Judge Chrystal's thorough written decision. We offer only the following brief comments.

The decision to award counsel fees "rests in the discretion of the trial court," Addesa v. Addesa, 392 N.J. Super. 58, 78 (App. Div. 2007) (citing R. 5:3-5(c)), and will be disturbed "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). In determining whether court exercised reasonable discretion, we consider whether the "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

With respect to a court's factual findings, reversal is warranted only when those findings are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests

of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (internal citation omitted). However, a court's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Substantively, a Family Part's counsel fee award is governed by Rule 5:3-5(c). See Gotlib v. Gotlib, 399 N.J. Super. 295, 314 (App. Div. 2008) ("Rule 4:42-9(a)(1) authorizes the award of counsel fees in a family action on a final determination pursuant to R[ule] 5:3-5(c)."). The court must discuss the support for its decision to award or deny counsel fees, but is not necessarily required to "specifically enumerat[e] every factor." Reese v. Weis, 430 N.J. Super. 552, 586 (App. Div. 2013). Further, "applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by [New Jersey Rules of Professional Conduct (RPC)] 1.5(a)." R. 4:42-9(b).

For purposes of awarding counsel fees, bad faith relates to the party's conduct during the litigation. Mani v. Mani, 183 N.J. 70, 95 (2005). The purpose of an award of fees against a "bad faith" litigant "is to protect the innocent party from unnecessary costs . . . ." Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000).

A-1178-17T1

After thoroughly reviewing the record in light of these legal principles and the applicable standard of review, we are satisfied the court did not abuse its discretion and that the September 28, 2017 order was supported by substantial, competent and credible evidence in the record. With respect to the financial circumstances of the parties and their ability to pay, the court relied on the parties' updated case information statements and joint expert's analysis that plaintiff's average annual pre-tax cash flow from 2012 to 2016 was $180,000, and that defendant's average pre-tax income was approximately $53,000 per year.

As to the court's finding that plaintiff acted in bad faith, the record confirms that plaintiff failed to comply with a pendente lite order and forced defendant to incur counsel fees to file an enforcement motion, yet still remained $11,000 in arrears in his child support and related obligations at the time of trial. Plaintiff also failed to comply with a case management order and did not submit documents that would have assisted in settlement, such as an intensive settlement conference (ISC) questionnaire. The court's finding of bad faith was further supported by plaintiff's conduct throughout litigation where he failed to report accurately his income and the value of his business, causing extensive litigation to develop facts that were ultimately stipulated.

The court's conclusion that defendant owed her current counsel $72,514.09 in fees, while plaintiff had a balance of only $9,000 in legal fees, despite having retained multiple attorneys, was fully supported by the parties' post-trial submissions. Additionally, while neither party prevailed entirely in the JOD, our review of the record confirms that defendant achieved significant success with respect to her request for alimony.

Likewise, the court's Rule 5:3-5(c) analysis supports the allocation of costs for the parties' joint accounting experts and mediator. In determining a cost allocation, a court may consider the Rule 5:3-5(c) factors, including the parties' ability to pay and their good faith. Platt v. Platt, 384 N.J. Super. 418, 429 (App. Div. 2006). The court's allocation of costs, directing plaintiff to pay 60% of the experts' and mediator's fees and defendant to pay the remaining 40%, is consistent with its Rule 5:3-5(c) findings and is therefore neither arbitrary nor manifestly unreasonable.

Plaintiff's claim that the trial court failed to conduct a proper RPC 1.5(a) analysis to determine the reasonableness of defendant's attorney's fee is equally without merit. After considering counsel's certification, which contained a thorough explication of the RPC 1.5(a) factors, the court determined defendant's primary counsel's hourly rate was reasonable and awarded defendant $72,514.09

in counsel fees, even though she incurred a total of $124,777.09 in fees and requested an award of $100,000. As the court based its decision on counsel's detailed certification, and plaintiff failed to make specific challenges to counsel's invoices, we conclude there was substantial, credible evidence to support the court's conclusion. See Addesa, 392 N.J. Super. at 79 (finding counsel fees claimed by the defendant to be reasonable based on the detailed certification submitted by counsel).

To the extent we have not directly addressed the balance of the plaintiff's arguments, we find them to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1178-17T1